UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANDY B. VINH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. 15-cv-01525 (RCL) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Andy B. Vinh brought this action against the Washington Metropolitan Area Transit Authority ("WMATA") alleging that the defendant discriminated against him based on his race, gender, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, when he was rehired by the defendant, as opposed to reinstated, after his criminal conviction was overturned on appeal. Before the Court is defendant's motion for summary judgement on all claims. ECF No. 22. Upon consideration of the motion, the response and reply thereto, the entire record of the case, and the relevant case law, the Court **GRANTS** the defendant's motion for summary judgment.

### I. BACKGROUND[1]

Plaintiff Andy B. Vinh, who is of Asian origin and of Vietnamese national origin, began working as a police officer for the Metro Transit Police Department (MTPD)—WMATA's police force—in 2008. On October 31, 2013, the plaintiff was convicted of second degree assault in

---

[1] All facts in this section are drawn from the Statement of Material Facts Not in Dispute, ECF. No. 22, and the Opposing Statement of Genuine Material Facts In Dispute, ECF No. 24-1.

Montgomery County, Maryland District Court. In response to the conviction, WMATA terminated the plaintiff's employment on November 25, 2013. He appealed his conviction and in January of 2014 the Montgomery County Circuit Court reversed his conviction and found him not guilty. At that point, the plaintiff reapplied for a position as a police officer with WMATA and was rehired, and not reinstated, on March 5, 2014.

At the time of his firing and rehiring, the plaintiff was a paying union member of the Fraternal Order of the Police ("FOP"). On the plaintiff's behalf, FOP only filed a Step One Grievance and failed to pursue any additional grievance procedures under the Collective Bargaining Agreement ("CBA"), including arbitration.

On September 18, 2015, the plaintiff filed a Complaint in the present action against WMATA. He alleges three counts of discrimination under Title VII (race, national origin, and gender based discrimination). The plaintiff's allegations center on the claim that WMATA should have reinstated him, as opposed to rehiring him, following the reversal of his second degree assault conviction.

## II. LEGAL STANDARDS

### A. Summary Judgement

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010) (internal quotation marks omitted). To show that a dispute is "genuine" and defeat summary judgment, the nonmoving party must present evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (internal citations omitted). Summary judgment is also appropriate when, "after adequate time for discovery," the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Title VII—National Origin, Race, and Gender Discrimination

Federal employment discrimination is prohibited by Title VII of the Civil Rights Act of 1964, under which it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Title VII claims that rely on circumstantial evidence—as opposed to direct evidence of discrimination—are analyzed under the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the employee "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *Id.* at 802. In cases concerning disparate treatment based on national origin, race, or sex, a prima facie case consists of a showing that "(1) [the plaintiff] is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (internal quotation marks omitted).

A plaintiff's "burden of establishing a prima facie case of disparate treatment is not onerous," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), and the requirement

3

of establishing a prima facie case "is 'not intended to be an inflexible rule.'" *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1353 (2015). Thus, "an individual plaintiff may establish a prima facie case by 'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII." *Id.*

If the employee establishes a prima facie case of discrimination, the burden "must shift to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse action. *McDonnell Douglas*, 411 U.S. at 802. The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [the action]" so as to "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55.

If the employer succeeds in offering legitimate, nondiscriminatory reasons for the action, the "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 252. The plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 255. Either way, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Evidence of pretext may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

In the context of a summary judgment motion where the defendant has offered a legitimate, non-discriminatory reason for the challenged decision the "question whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). At that stage, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* at 494.

### III. ANALYSIS

#### A. The Defendant Has Offered a Legitimate, Non-Discriminatory Reason for Rehiring, As Opposed to Reinstating, the Plaintiff

The defendant put forth evidence that it rehired, as opposed to reinstated, the plaintiff following his conviction being overturned based on its understanding of the CBA agreement between WMATA and FOP. Chief of Police Ronald Pavlik avers that he understood Article Five of the CBA to require the plaintiff's seniority be terminated when he was fired for just cause on November 25, 2013, following his conviction on second degree assault.[2] ECF No. 22-2, ¶ 11. He subsequently decided to rehire the plaintiff following the reversal of his conviction and the expungement of his record. In his affidavit, Chief Pavlik states that he read Section Five of Article Five of the CBA to require that plaintiff's seniority start from the date of reemployment.[3] ECF

---

[2] Section Three of Article Five of the CBA provides, "An employee's seniority shall be terminated or the following reasons: (a) Resignation, voluntarily quit, discharge for just cause or retirement; or (b) unauthorized absence for three (3) consecutive work days [...]." ECF No. 22-2, pg. 15.

[3] Section Five of Article Five of the CBA provides, "Upon the reemployment of any employee, previously separated from the Department in good standing, the employee's starting salary, at the discretion of the Chief, may be established at the step the employee held at the time of the employee's separation. However, in accordance with Article 5, Section 1, of this Agreement, employee's seniority date shall be the date of the employee's reemployment." ECF No. 22-2, pg. 16.

No. 22-2, ¶ 14. In other words, Chief Pavlik believed that the CBA explicitly disallowed him from reinstating the plaintiff and providing him with his previous level of seniority.

Plaintiff contends that WMATA's reasoning is "conclusory" and "bare bones." ECF No. 24-2, pg. 8. Plaintiff further argues that "there is no provision [in the CBA] stating that rehiring is the status quo under the CBA." *Id.* The Court finds these arguments unavailing. Chief Pavlik's reading of the CBA is reasonable and would offer a legitimate basis for his decision. Section Five of Article Five clearly indicates that where an employee is reemployed, the "employee's seniority date shall be the date of the employee's reemployment." ECF No. 22-2, pg. 16. Even if one could argue for a different reading of the CBA, the Court recognizes that "whether an employer's proffered non-discriminatory reason is 'legitimate' is a relatively lenient standard." *Tabron v. Johnson*, 21 F.Supp.3d 84, 87 (D.D.C. 2014) (citing *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Moreover, the issue is not "the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers." *Fischbach*, 86 F.3d at 1183. Here, the defendant produced evidence that the individual responsible for the decision—Chief Pavlik—was motivated by a reasonable reading of the CBA. Accordingly, the Court finds that the defendant offered a legitimate, non-discriminatory reason for the decision.

### B. The Plaintiff Has Failed To Provide Evidence That Defendant's Proffered Reason for Rehiring Was Pretext For Discrimination

Since the Court finds that the defendant proffered a legitimate, non-discriminatory reason for its action, the burden shifts to the plaintiff to establish that WMATA's reason was in fact pretext for discrimination. The plaintiff asserts three arguments in an attempt to carry his burden and the Court will address each one in turn.

First, the plaintiff points to the multiple interactions he had with FOP and WMATA officials following his conviction. He contends that "the assurances from both the union and

WMATA officials that Plaintiff would be reinstated sheds doubt on the credibility of the statement that rehiring and not reinstatement is the standard procedure." ECF No. 24-2, pg. 10. Specifically, the plaintiff highlights that union representatives assured him that they would fight for his reinstatement and that Captain Gaddis, an MTPD official, informed him that if he successfully appealed his conviction he would be reinstated. According to the plaintiff "[t]he fact that the union and WMATA officials were so quick to assure Plaintiff that an overturned conviction would result in his reinstatement contravenes the Defendant's argument that the CBA and WMATA policy requires a rehire and not reinstatement." *Id.*

Plaintiff's second argument follows along the same lines. He alleges that from March 2014 to October 2014, WMATA delayed his full reinstatement. According to WMATA officials, while he was provisionally rehired in March, he could not be fully reinstated until after he acquired his Maryland Blue Card.[4] Following months of delay, the plaintiff claims that he himself inquired into the status of his Blue Card and he learned that it was intact. Plaintiff contends that Captain Greg Hanna, an MTPD official, held up the process and that "[t]hese are not the actions of an organization that is merely adhering to a collective bargaining agreement. These actions were taken to discriminate against the Plaintiff based upon his race." ECF No. 24-2, pg. 11.

Even accepting all of the plaintiff's factual assertions as true, there is still no evidence that Chief Pavlik's offered reason for this action was pretext for discrimination. Notably, Chief Pavlik is absent from the plaintiff's account. Plaintiff does not allege that he offered assurances of reinstatement or that he took part in delaying the process. Nor does plaintiff contest the fact that Chief Pavlik was the official ultimately responsible for terminating and rehiring the plaintiff (even

---

[4] MTPD police officers are required to have a valid Maryland Police Corrections and Training Commission Certification and Training Standards Compliance Card, know more commonly as a "Blue Card". The plaintiff lost his Blue Card following his conviction and it could only be reacquired following the expungement of his record. ECF No. 22-2, ¶¶ 6, 15, 16.

7

if other officials at WMATA would have been involved in the process). Therefore, neither of the arguments above call into question his decision making nor undercut that he legitimately believed that the CBA required rehiring as opposed to reinstating.

The crux of the plaintiff's third argument is that WMATA has a history of treating Asian-Americans worse than employees of other racial backgrounds. In support of that claim, plaintiff presents evidence of a number of similarly situated employees who were treated more favorably. Plaintiff also presents evidence of employees treated more favorably in order to support his claim that he was discriminated on the basis of his gender and his national origin. In total, plaintiff presents evidence of five comparators: T.H., S.B., M.S., I.N., and N.M. *See* ECF No. 24-2, pgs. 11-15.

Specifically, the plaintiff alleges that T.H., S.B., M.S., and I.N.—all African-American individuals—were treated more favorably than him due to his race. M.S. and S.B. were both reinstated despite having been fired for malfeasance uncovered in internal investigations. T.H.— who was involved in an act of malicious vandalism—remained an officer and was allowed to carry a firearm, despite her Blue Card having been revoked. And I.N.—who was arrested on charges of trespassing into an area where he had been previously arrested for soliciting sex from a prostitute— were never even terminated in the first place, only suspended. *Id.*, pgs. 4-5. Next, plaintiff contends that T.H., an African-American female, was treated more favorably due to gender. *Id.*, pg. 14. And finally, N.M.—who is of Filipino national origin—was treated more favorably than plaintiff—who is of Vietnamese national origin—as evidence by the fact that he was reinstated following his termination.[5] *Id.*, pg. 15.

---

[5] The Court notes an apparent contradiction in plaintiff citing N.M. as a comparator in this context. In alleging that WMATA has a history of mistreating Asian-Americans on the basis of racial discrimination, the plaintiff raised the example of N.M., an Asian-American, who was terminated for his conduct and went through a lengthy process for reinstatement. Plaintiff argued that he was treated worse than T.H. and I.N., who were both African-American. Now,

The defendant responds by noting that three of the five comparators—M.S., S.B., and N.M.— are not similarly situated to the plaintiff as a matter of law because they were only reinstated pursuant to an arbitration agreement. Unlike the plaintiff, those three officers pursued their labor remedies under the CBA and an arbitrator ultimately ordered WMATA to reinstate them to their former positions and seniority. See ECF No. 22-2, ¶¶ 17, 18. The plaintiff did not pursue arbitration. His union representatives failed to move past Step One of the grievance process (arbitration is only invoked after Step Four). *Id.*, ¶ 21.

The Court finds this argument persuasive and agrees that as a matter of law, those three officers cannot be considered mutually exclusive. In order for the plaintiff to be considered similarly situated to the other officers, he is "required to demonstrate that all of the relevant aspects of [his] employment situation were 'nearly identical' to those of the [the other officers]." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (internal quotation marks and citation omitted). That the plaintiff did not pursue arbitration constitutes a major difference. Chief Pavlik attests that under his watch no officers, who were previously terminated, were reinstated unless he was ordered to do so by an arbitrator. Plaintiff argues that the "union let [his] case fall by the wayside." ECF No. 24-2, pg. 13. But even if true, that has no bearing on this analysis. The plaintiff's claims allege that WMATA officials treated him disparately from other officers by not reinstating him, not that his union representatives treated him poorly. It is also important to note another difference between the plaintiff and M.S., S.B., and N.M. Those three officers were terminated based on violations of internal policies not because they were criminally convicted, as the plaintiff was in this case.

---

plaintiff cites N.M. as a similarly situated employee treated more favorable on the basis of national origin. Plaintiff appears to be arguing both that N.M. was discriminated against due to his race and yet was treated more favorably than plaintiff based on his national origin.

Next, the defendant contends that I.N. is not a proper comparator to the plaintiff because he was not terminated for his conduct. The plaintiff's claims are about reinstatement, not termination. He explicitly acknowledges that he does not contest WMATA's decision to terminate him. *See* ECF No. 22-4, pg. 2. Therefore, the actions by the defendant pertaining to an individual who was not terminated are not relevant to the present case. As it relates to I.N., the defendant did not need to face the decision of whether to reinstate or rehire, which is precisely the decision that is under scrutiny here. As a matter of law, even if the Court accepts the plaintiff's testimony related to I.N. as true,[6] it does not do any work in proving that the defendant's stated reason for its action was pretext for discrimination.

Finally, the Court agrees with the defendant that T.H. is also not a similarly situated employee for the purpose of proving that defendant's legitimate, non-discriminatory reason was pretext. Unlike the three officers discussed above, T.H. was reinstated without the benefit of an arbitration award. However, a major difference highlights that T.H.'s circumstances were not "nearly identical" to the plaintiff's circumstances. *Neuren*, 43 F.3d at 1514. T.H. was reinstated in 2007, roughly six years before the relevant facts in this case, and most importantly the decision to reinstate T.H. was made by then-Acting Chief David Shaw. Chief Pavlik avers that he was not privy to that decision and that he believes it was done contrary to the CBA. *See* ECF No. 22-2, ¶ 19. In fact, it is the only case in the last twenty years where an officer was reinstated not as a result of an arbitration award. *Id.* Since the plaintiff bears the burden of proving that Chief Pavlik's stated reason for rehiring was pretext, it is highly relevant that the comparatively more favorable treatment was under a different decision maker. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583

---

[6] The defendant argues that the Court should not even accept the evidence because it was presented by the plaintiff on the basis of a newspaper article, which is hearsay evidence. The Court need not reach this issue for the reason discussed above.

10

(6th Cir. 1992) ("[T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."); *see also Phillips v. Holladay Property Serv.*, 937 F.Supp. 32, 37 (D.D.C. 1996) (same).

The plaintiff alleges that since a reemployment decision must "go through WMATA's HR Department and ultimately be approved by the General Manager of WMATA" defendant's argument that the "comparators are not similar to Plaintiff because there were different decision makers does not hold water." ECF No. 24-3, pgs. 12-13. The Court disagrees. While other officials are involved in these personnel decisions, the evidence indicates that Chief Pavlik was the primary decision maker. In his affidavit, Chief Pavlik asserts that he made the decision to terminate and subsequently rehire the plaintiff. The plaintiff does not suggest that the decision to rehire could have been made independent of Chief Pavlik's viewpoint. But even if the Court did find T.H. to be similarly situated to the plaintiff that data point alone is not sufficient to carry the plaintiff's burden of demonstrating pretext. One incident in a twenty year period in which an officer was reinstated without an arbitration award does not prove much. And the Court is mindful of the principal that courts should "decline to second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982).

In sum, the Court is not persuaded that any of the five comparators presented by the plaintiff are similarly situated such that they can prove that Chief Pavlik's offered reason for his actions was pretextual. In his sworn testimony, Chief Pavlik conveyed his belief that the language of the CBA required him to rehire, as oppose to reinstate, the plaintiff. The Court finds that to be

a legitimate, non-discriminatory reason. And none of the evidence presented by the plaintiff proves "*both* that [his] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515. The plaintiff has failed to meet his burden and the Court finds that there is no genuine dispute as to any material fact and that the defendant is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** the defendant's motion for summary judgment, ECF No. 22. The case is hereby **DISMISSED**. A separate Order accompanies this Memorandum Opinion.

It is **SO ORDERED**.

Date: March 19, 2018

Royce C. Lamberth
United States District Judge